## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JOE CARL VALDEZ, | § | |
| (TDCJ-CID #923705) | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-04-2038 |
| | § | |
| DOUGLAS DRETKE, *et al.,* | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND OPINION

Joe Carl Valdez, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in May 2004, alleging civil rights violations resulting from a denial of medical care, a denial of due process, and retaliation. Valdez, proceeding *pro se* and *in forma pauperis*, sues Douglas Dretke, former Director of TDCJ-CID; Lannette Linthicum, physician; and the University of Texas Medical Branch.

The threshold issue is whether Valdez's claims should be dismissed as frivolous. The court concludes that Valdez's claims lack merit and should be dismissed for the reasons stated below.

## I.    Plaintiff's Allegations

Valdez complains that the defendants have delayed in providing him with

proper medical care for his damaged esophagus.   Valdez asserts that he suffers everyday when he tries to eat food.  His condition has worsened and his esophagus occasionally bleeds.

Valdez states that on September 12, 2000, he consumed contaminated spinach while confined at the Stevenson Unit.

Valdez states that he suffers from esophageal varices or enlarged veins in the esophagus.  The increased pressure in the swollen veins can cause bleeding.  A common cause of this condition is the scarring of the liver which prevents the normal flow of blood from the intestines to the liver.

Valdez was first diagnosed with esophageal varices in December 2000.  Valdez states that he received medication for the condition but it was ineffective.  (Docket Entry No. 17, Plaintiff's More Definite Statement, p. 7).   Medical personnel performed a diagnostic test called a barium swallow on May 3, 2001, which showed nothing. (*Id.* at 8).  Valdez had a second barium swallow in December 2002.  Valdez claims the technician who performed the barium swallow failed to make note of Valdez's disorder, and this delayed proper treatment of his condition.  On June 12, 2003, medical personnel inserted a tube containing a camera through Valdez's nose and esophagus.  This test revealed nothing.  The same test was done on March 9, 2005 which revealed esophageal varices.  Valdez was prescribed Ranitidine, Isocal,

and Nortriptyline.

Valdez states that he needs surgery because his medical condition is life-threatening.  Valdez asserts that his esophagus could bleed at any time, posing the risk that he could suffocate in his own blood.  Valdez states that from September 6, 2000 to August 12, 2005, he was seen in the hospital ten times and countless times in the infirmary.  When Valdez asked for surgery, physicians advised Valdez that surgery was the last option and that they would first treat the condition with medications.  (Docket Entry No. 17, Plaintiff's More Definite Statement, pp. 9-10).  Valdez complains that he received medications, but they were not always what the physician prescribed.

Valdez claims that Douglas Dretke failed to train his health services personnel and caused Valdez to suffer pain, weight loss, and deprivation of adequate nourishment.  Valdez asserts that Dr. Linthicum failed to investigate Valdez's medical condition.  She was responsible for addressing the health care needs of all Texas inmates.

Valdez asserts that he requested hyper-caloric meals, and Officer Morgan stated that such meals were not available but that Valdez could have medical snacks. Officers told Valdez that he could have extra bread or potatoes, but Valdez complains that these foods made him choke.  Officers ordered Valdez to get out of the food

service line and threatened to use force against him.  As a result of the officers'
constant abuse of their authority, Valdez suffers from sleep deprivation; hunger pains;
elevated blood pressure; migraines; vision loss; dizziness; tremors; weakness; fatigue;
anger; violence; vomiting; and hallucinations.  Officers have filed frivolous charges
and deprived him of recreational privileges.  Though Valdez has a slow eating pass
and a cup pass, officers failed to honor these passes.

Valdez mentions that prison officials violated his right to due process on
several occasions from August 2003 to August 2005.  Valdez provides information
as to a disciplinary hearing on August 10, 2005.  Valdez was initially charged with
talking in the hallway on August 4, 2005, and the charge was modified to failure to
obey an order.  Valdez received notice of the charges on August 5, 2005.  Valdez
attended the hearing and made an oral statement.  Valdez wished to call four
witnesses but they were allegedly intimidated by prison officials.  The hearing officer
found Valdez guilty and punished him with a loss of commissary privileges for 30
days; cell restriction for 30 days; and placement in solitary confinement for 15 days.
Valdez received a copy of the factual findings of the hearing officer.  The hearing
officer found Valdez guilty based on the charging officer's testimony and written
report.

Valdez also claims that prison officials are retaliating against him for filing a

grievance against Lieutenant Losack.  Since that date, prison officials have threatened Valdez and charged him with false disciplinary charges.  Valdez has suffered a demotion in good-time earning class status.

Valdez claims that the defendants have retaliated against him by denying him medical care; and denying him recreation.  Valdez believes that the defendants' acts are motivated by retaliation though they have not expressly stated that they are retaliating against Valdez.  Defendants have retaliated against him from December 2002 to August 2005.

Valdez claims that officials inadvertently turned off the water to his cell.  Officers explained that they meant to turn off the water to a different cell, not Valdez's cell.  Valdez complains that he was without water for 23 hours and was unable to dispose of human waste.

Valdez seeks unspecified compensatory damages.

## II.    Standard of Review

Under 28 U.S.C. § 1915A, federal courts are authorized to review, before docketing, if feasible, or in any event as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.  The court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A governs this suit by a prisoner against a prison official. In *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998), the Fifth Circuit held that Section 1915A applies even when a prisoner has paid the required filing fee.

A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir. 2001)(citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998)(quoting *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997)).

## III.   The Claims Based on the Denial of Adequate Medical Care

"[I]nadequate medical care by a prison doctor can result in a constitutional violation for purposes of a § 1983 claim when that conduct amounts to deliberate indifference to [the prisoner's] serious medical needs, constitut[ing] the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999)(quoting *Estelle v. Gamble,* 429 U.S. 97 (1976)). Under the "deliberate indifference" standard, a prison official is not liable

for the denial of medical treatment "unless the official knows of and disregards an excessive risk to inmate health or safety". *Stewart*, 174 F.3d at 534 (citing *Estelle*, 429 U.S. at 104).   While malpractice and negligent treatment do not rise to the level of a constitutional tort, *see Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993), a claim of "unnecessary and wanton infliction of pain repugnant to the conscience of mankind," can state a claim of a constitutional tort. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997) (citing *Estelle*, 429 U.S. at 105-106).

In *Estelle*, the Supreme Court concluded:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.   Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle*, 429 U.S. at 104-05.

To state an Eighth Amendment claim, a plaintiff must allege a deprivation of medical care sufficiently serious to show that "the state has abdicated a constitutionally-required responsibility to attend to his medical needs," *Bienvenu v. Beauregard Parish Police Jury*, 705 F.2d 1457, 1460 (5th Cir. 1983), and that a

prison official knew of and disregarded "an excessive risk to inmate health or safety." *Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir. 1999) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir. 1998)(quoting *Farmer,* 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of the substantial risk." *Reeves v. Collins,* 27 F.3d 174, 176 (5th Cir. 1994)(citing *Farmer,* 511 U.S. at 842 & n.8).

Under the facts alleged by Valdez, this standard is not met. Valdez has not demonstrated that the medical care provided to him posed a substantial risk to his future health. By his own admissions, medical personnel performed diagnostic tests and prescribed medications. Such evidence of examinations and treatment negate Valdez's claim of deliberate indifference. *Bass v. Sullivan,* 550 F.2d 229 (5th Cir. 1977).

Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. *Domino v. Texas department of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001)(citing *Johnson v. Treen,* 759 F.2d 1236, 1238 (5th

Cir. 1985)).  Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson,* 759 F.2d at 1238.  Furthermore, the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle,* 429 U.S. at 107.  And the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970. Therefore, Valdez's claims should be dismissed as frivolous under 28 U.S.C. § 1915A(b)(1).

Valdez also complains that TDCJ-ID medical personnel failed to perform surgery.  Valdez asserts that surgery was the best option given the seriousness of the condition.  Valdez states that medical personnel considered surgery to be the last resort after medications did not work.  Valdez claims that medications he received were ineffective. (Docket Entry No. 17, Plaintiff's More Definite Statement, p. 8).

Valdez complains that he should have been given the proper medications. *(Id.).* "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimizana,* 122 F.3d 286, 292 (5th Cir. 1997).

As noted, medical records of examinations, diagnoses, and medications rebut

Valdez's allegations of deliberate indifference. *Mendoza v. Lynaugh*, 989 F.2d 191, 193-95 (5th Cir. 1993). Valdez admits that he was seen by medical personnel on several occasions. Valdez has not alleged facts demonstrating that the defendants were aware of, and disregarded, a substantial risk of harm to Valdez. Nor did he suffer substantial harm as a result of not having surgery.

Valdez complains of the delay in receiving treatment. He asserts that medical personnel delayed treating his esophagus problems for three years. As a result, Valdez claims that he faced an increased risk of bleeding and choking. Valdez complains that he had trouble eating, lost weight, lost sleep, had migraines, lost vision, and became dizzy.

To establish an Eighth Amendment claim for denial of medical care, the inmate must show deliberate indifference to "serious" medical needs, "[b]ecause society does not expect that prisoners will have unqualified access to health care." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Constitutionally adequate care does not, however, ensure that an inmate will agree with every treatment decision. *Estelle*, 429 U.S. at 107-08.

To succeed on his claims of denial of medical care, Valdez must show (1) deliberate indifference (2) to a serious medical need. Accepting Valdez's claims as true, he had a serious medical need. The question is thus whether he has shown that

the defendants were deliberately indifferent to that need.  He alleges that medical staff were deliberately indifferent when they delayed medical treatment for three years.

Valdez's pleadings show that medical personnel responded to Valdez's complaints, examined Valdez, performed diagnostic procedures, and prescribed medications.  Valdez admits that he was hospitalized on at least ten occasions and seen in the infirmary on countless occasions.  Valdez has not alleged facts demonstrating the defendants were aware of, and disregarded, a substantial risk of harm to Valdez.  Nor did he suffer substantial harm as a result of the alleged delay in treatment.  Thus, Valdez's claim based on deliberate indifference to his serious medical needs is DISMISSED as frivolous. 28 U.S.C. § 1915A(b)(1).

## IV.   The Due Process Claim

The Supreme Court applies two standards to prison disciplinary procedures, depending on the sanction imposed and the consequences that result.[1]  *Walker v. Navarro County Jail,* 4 F.3d 410, 412 (5th Cir. 1993).  A prisoner punished by

---

[1]   In *Edwards v. Balisok,* 520 U.S. 641  (1997), the Supreme Court approved the application of the doctrine announced in *Heck v. Humphrey,* 512 U.S. 477 (1994), to the prison disciplinary setting.  The *Edwards* Court held that a conviction for purpose of *Heck* includes a ruling in a prison disciplinary proceeding that results in a change to the prisoner's sentence, including the loss of good time credits.  *Id.* at 648;  *Clarke v. Stalder,* 154 F.3d 186, 189 (5th Cir. 1998) (citing *Edwards,* 520 U.S. at 648).  Valdez did not suffer a loss of good time as punishment.  (Docket Entry No. 17, Plaintiff's More Definite Statement, p. 12 ).  His claims do not include a violation that affected the duration of his confinement.  Valdez's claims are not barred by the holding in *Heck.*

solitary confinement and loss of good-time credits must receive: (1) written notice of the charges against him at least twenty-four hours before the hearing; (2) a written statement of the fact finders as to the evidence relied on and the reasons for the disciplinary action taken; and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell,* 418 U.S. 539, 563-66 (1974). On the other hand, a short period of administrative segregation, having no effect on parole, requires an informal nonadversary evidentiary review, as long as the prisoner receives notice and an opportunity to present a statement. *Hewitt v. Helms,* 459 U.S. 460, 476-77 (1983).

For the incident that occurred on August 4, 2005, Valdez received notice of the charges in Disciplinary Case 20050335677 on August 5, 2005. (Docket Entry No. 17, Plaintiff's More Definite Statement, p. 11). On August 10, 2005, Captain Losack conducted a disciplinary hearing and found Valdez guilty of disobeying an order.

Valdez made an oral statement. He was punished with a loss of commissary privileges for thirty days; cell restriction for thirty days; and placement in solitary confinement for 15 days. Valdez received a copy of the disciplinary hearing records containing the factual findings of the hearing officer. In finding Valdez guilty, the hearing officer considered the officer's report and the charging officer's testimony.

Valdez states that he wished to call four witnesses, but they were afraid to testify and prison officials intimidated his witnesses. (Docket Entry No. 17, Plaintiff's More Definite Statement, p. 11).   Prison officials have the discretion to keep disciplinary hearings within reasonable limits necessary to maintain institutional order. *Ponte v. Real,* 471 U.S. 491, 499 (1985)(quoting *Wolff,* 418 U.S. at 566). The Supreme Court stated in *Wolff* that the federal judicial system "should not be too ready to exercise oversight and put aside the judgment of prison administrator[s]." *Id.* at 565. "Some amount of flexibility and accommodation is required" in prison disciplinary hearings. *Id.* at 566.  In the exercise of administrative discretion, the Court said, the Constitution permits prison officials either to give a contemporaneous reason for denial of witnesses and evidence, or deal with later court challenges on a case-by-case basis. *Id.* The Court suggested other valid reasons, besides security concerns, would be "irrelevance, lack of necessity, or the hazards presented in individual cases." *Id.* Consequently, there is no clearly established right to present live witness testimony in prison disciplinary hearings in all cases.

In this case, the hearing officer allowed Valdez to present an oral statement. There is no indication on the hearing record that Valdez requested to present witnesses. (Docket Entry No. 17, Plaintiff's More Definite Statement, Attachment 1, p. 1).  Nor is there evidence that the hearing officer denied this request. *(Id.).*

Valdez does not assert that he was denied the chance to put evidence before the hearing examiner. Even if the hearing officer had denied Valdez permission to call witnesses, the decision to exclude live witnesses was within the hearing officer's administrative discretion.

Valdez had twenty-four hours advanced written notice of the hearing. He had an opportunity to make an oral statement at the hearing. Valdez received a copy of the written statement by the fact-finders of the basis for the findings and the reasons for the punishment. Valdez has not alleged a violation of his right to due process.

## V.      The Retaliation Claim

Prison officials may not retaliate against an inmate because that inmate exercised his right of access to the courts or complained to a supervisor about a guard's misconduct. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995), *cert. denied*, 516 U.S. 1084 (1996). The prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties. Claims of retaliation must therefore be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions. *Woods*, 60 F.3d at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995)). To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield

of retaliation around them, trial courts must carefully scrutinize these claims.

To prevail on a claim of retaliation, an inmate must establish: (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for exercising that right, (3) a retaliatory or adverse act, and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). Causation requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)(quoting *Woods*, 60 F.3d at 1166), *cert. denied*, 522 U.S. 995 (1997).

Mere conclusory allegations of retaliation are insufficient to withstand a motion for summary judgment. *Woods*, 60 F.3d at 1166. "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Johnson v. Rodriguez*, 110 F.3d at 310 (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which retaliation may be plausibly inferred." *Woods v. Smith*, 60 F.3d at 1166 (internal quotation marks omitted).

In *Morris v. Powell*, 449 F.3d 682, 685-86 (5th Cir. 2006), the Fifth Circuit considered, as a matter of first impression, whether an allegation of de minimis retaliatory acts can support a retaliation claim. The Fifth Circuit explained:

The de minimis standard enunciated by our sister circuits is consistent with this court's precedent. The standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of "federal courts embroil[ing] themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166. The purpose of allowing inmate retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising constitutional rights. *See Crawford-El*, 523 U.S. at 588 n.10, 118 S. Ct. 1584. Some acts, though maybe motivated by retaliatory intent, are so de minimis that they would not deter the ordinary person from further exercise of his rights. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim.

We must explain, however, that this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials. Retaliation against a prisoner is actionable only if it is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.

*Morris*, 449 F.3d at 686.

Valdez states that in August 2003, he complained of a problem to Lieutenant Losack, but Lieutenant Losack ignored Valdez.   Valdez states he then filed a grievance against Lieutenant Losack.   Valdez asserts that from August 2003 to August 2005, prison officials have filed false disciplinary cases and threatened Valdez. Valdez claims that the defendants, acting out of retaliation, have denied him medical care and nutrition on many dates.  He complains that prison officials have

caused his demotion in custodial classification and that this prevented his release to parole. Valdez believes that from December 2002 to August 2005, the defendants have acted with a retaliatory motive. (Docket Entry No. 17, Plaintiff's More Definite Statement, pp. 15-16).

Valdez has not offered any competent evidence of a retaliatory motive on the part of the named defendants. Nor has he alleged a chronology of events from which retaliation may be plausibly inferred. Valdez asserts that he was repeatedly denied medical care and denied due process as retaliation. This court has determined that Valdez's medical care claim lacks merit. This court also determined that Valdez's claim of due process relating to the disciplinary hearing on August 10, 2005 lacks merit. Valdez claims the defendants began retaliating against him after he filed a grievance against Lieutenant Losack in August 2003. The fact that one event follows another in time does not prove retaliation. *Enlow v. Tishomingo County, Miss.*, 45 F.3d 885, 889 (5th Cir. 1995).

Valdez's claims amount to nothing more than his personal belief that he was the victim of retaliation. Valdez's conclusory allegations are insufficient to establish the defendants retaliated against him for exercising his right to complain about the defendants' alleged misconduct.

Valdez has not presented any evidence of a causal connection between his

exercise of his constitutional right and the alleged retaliatory acts.

## VI.   Plaintiff's Motion to Amend Complaint

Valdez's complaint is governed by the Prison Litigation Reform Act ("PLRA").

Under the PLRA, a prisoner is not entitled to commence an action or file an appeal

without prepayment in some form.  In that regard, the PLRA requires prisoners filing

lawsuits to pay an initial partial filing fee.  *See* 28 U.S.C. § 1915(b)(1).  The PLRA

also requires prisoners to pay thereafter the balance of the full filing fee.  *See id.*

"The new fee provisions of the PLRA were designed to deter frivolous prisoner

litigation 'by making all prisoner litigants feel the deterrent effect created by liability

for filing fees.'" *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997)

(quoting *Jackson v. Stinnett*, 102 F.3d 132, 136-37 (5th Cir. 1996)).

The PLRA requires district courts to screen complaints from prisoners as soon

as practicable after docketing and to identify cognizable claims or dismiss the

complaint, or any portion thereof, "if the complaint (1) is frivolous, malicious, or fails

to state a claim upon which relief may be granted; or (2) seeks monetary relief from

a defendant who is immune from such relief." 28 U.S.C. § 1915A.  The "three-

strikes" provision of the PLRA prohibits prisoners from proceeding with a civil

action *in forma pauperis* in federal court if, while incarcerated, three or more of his

civil actions or appeals were dismissed as frivolous or malicious or for failure to state

a claim upon which relief may be granted, unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g); *Adepegba v. Hammons*, 103 F.3d 383, 385 (5th Cir. 1996).

In the past, a prisoner plaintiff proceeding *pro se* and *in forma pauperis* had often been allowed to assert improperly-joined claims against defendants lacking any connection except that they were encountered during the plaintiff's incarceration. This was done for purposes of judicial economy and to avoid placing procedural barriers before the *pro se* litigant. However, in light of the provisions of the PLRA, to continue this practice would be to defeat, or at least greatly dilute, the clear intent of the fee payment provision of the statute and to allow prisoner litigants to circumvent the "three-strikes" provision.

Valdez alleges that on March 14, 2007, Valdez was transferred to the Clements Unit and assigned to the high security classification. (Docket Entry No. 24, Supplement to Complaint, p. 1). Valdez states that he is not a violent or assaultive inmate. An officer told Valdez that he had received several nonaggressive threats on officers. Valdez further seeks to add Dr. Revel and Physician's Assistant Ms. Paul because they removed medical restrictions from his records. (Docket Entry No. 26).

In this case, the complaint filed by Valdez asserts a claim based on the denial of adequate medical care, denial of due process, and retaliation. His supplemental

pleadings clearly make allegations against other defendants and involve more than one transaction.  Rule 18(a) of the Federal Rules of Civil Procedure only allows a plaintiff to join "either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party."  Rule 20 of the Federal Rules of Civil Procedure only allows the joinder of several parties if the claims arose out of a single transaction and contain a question of fact or law common to all the defendants.  By naming multiple defendants and including numerous transactions, Valdez's amended complaint does not comport with Rule 18 and Rule 20 of the Federal Rules of Civil Procedure.  *See* 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1583 (2d ed. 1990) (noting that, under Rules 18(a) and 20, if the claims arise out of different transactions and do not involve all defendants, joinder should not be allowed); *see also Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) (refusing to allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay the full amount of the filing fee); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

This court will not allow Valdez to circumvent the PLRA's three-strikes

provision by allowing him to amend his complaint. Valdez must file his new claims in a separate lawsuit. At that time, Valdez would be required to pay a filing fee of $350 for each additional lawsuit. Valdez's motion to amend complaint, (Docket Entry No. 26), is DENIED.

## VII.  Conclusion

The action filed by Joe Carl Valdez (TDCJ-CID Inmate #923705) lacks an arguable basis in law. His claims are DISMISSED with prejudice under 28 U.S.C. § 1915A(b)(1). Valdez's motion to amend complaint, (Docket Entry No. 26), is DENIED. Any remaining pending motions are DENIED as moot.

The TDCJ-CID must continue to deduct twenty percent of each deposit made to Valdez's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $150.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1)    the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2)    the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)     the District Clerk for the Eastern District of Texas, 211 West Ferguson,

Tyler, Texas 75702, Attention: Manager of the Three-Strikes List.

SIGNED at Houston, Texas, on _____JULY 26_____, 2007.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE